**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------

**ADRIAN DEDUSHAJ,**

                 **Petitioner,**

             **- against -**

**HAROLD C. GRAHAM, SUPERINTENDENT,**
**AUBURN CORRECTIONAL FACILITY,**

                 **Respondent.**
-----------------------------------------

**07 Civ. 5401 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The petitioner, Adrian Dedushaj, brings this petition for habeas corpus under 28 U.S.C. § 2254 seeking to vacate his conviction on a single count of assault following a jury trial in state court. He alleges as the basis for his petition the ineffective assistance of trial counsel.

I

The evidence at trial showed that on July 15, 2003, there was an altercation at a Manhattan intersection between the petitioner, who was crossing the intersection as a pedestrian with his fiancé, and Omar Green, who was poised to drive a Sports Utility Vehicle across the intersection. The testimony differed as to who provoked whom, but obscenities were exchanged and the two men quickly found themselves facing each other on the street at close range, continuing to trade obscenities and

anticipating a possible fight. (Trial Transcript ("Trial Tr.") at 64-68, 414-49.) The petitioner was wearing a brace on his right arm due to a recent elbow injury. (Trial Tr. at 63, 426.) At trial, the petitioner testified that Mr. Green threw an initial punch at his injured right arm, and that he was afraid Mr. Green was going to beat him severely. (Trial Tr. at 430-31.) The petitioner entered a nearby bodega and obtained a glass bottle, which he intentionally broke. The petitioner then jabbed at Mr. Green with the broken bottle, allegedly in order to scare him, and Mr. Green warded it off with his hands, (Trial Tr. at 431-439), sustaining injuries and losing a significant amount of blood, (Trial Tr. at 258).

The petitioner was charged under N.Y. Penal Law § 120.10 with first-degree assault, a felony that carries a penalty of five years to twenty-five years imprisonment. N.Y. Penal Law § 70.02(3)(a). He retained Michael Marley, Esq. to represent him. Prior to trial, the District Attorney offered a plea bargain to the petitioner, through Mr. Marley, of three years imprisonment in exchange for the petitioner's pleading guilty to second-degree assault. (Evidentiary Hearing Transcript ("Tr.") at 6.) Mr. Marley conveyed the offer to the petitioner. (Tr. at 24; Dedushaj Ex. F ¶ 3.) The petitioner rejected the offer, at least in part due to his concern that accepting the offer would

jeopardize his immigration status.  (Tr. at 26-27; Dedushaj Ex. F ¶ 3.)

Trial proceeded in the New York State Supreme Court, New York County.  At trial, Mr. Marley pursued a "justification" strategy, attempting to convince the jury that the petitioner had acted in self-defense.  (Tr. at 40-41.)  Mr. Marley succeeded in persuading the trial judge, Judge Grella, to include an instruction on self-defense in the jury charge. (Trial Tr. at 593.)  The jury returned a guilty verdict, and Judge Grella imposed a sentence of five years imprisonment to be followed by two and one-half years of supervision upon release.

The petitioner did not appeal his conviction, but timely filed a motion through Stanley L. Cohen, Esq. to vacate the judgment pursuant to N.Y. Crim. Proc. § 440.10.  The petitioner argued that he had been denied the effective assistance of trial counsel because the justification defense had been fatally flawed, Mr. Marley had not adequately educated the petitioner about the justification defense, and given the lack of a viable defense, Mr. Marley had failed to advise the petitioner forcefully enough to accept a plea offer prior to trial. (Dedushaj Ex. A.)  Justice Allen denied the motion without a hearing, on the grounds that the justification defense had represented a reasonable trial strategy, and that the petitioner's argument made no sense because his sentence of five

3

years was toward the low end of the spectrum of possible sentences for first-degree assault. (Dedushaj Ex. H.) Leave to appeal to the Appellate Division was denied. (Dedushaj Ex. J.)

This petition, also filed through Mr. Cohen, followed. The petition recapitulates the argument advanced in the § 440.10 motion: Mr. Marley should have urged the petitioner more emphatically to accept the District Attorney's offer of a plea bargain providing for a three-year sentence, in light of the flaws inherent in the petitioner's justification defense.[1] This Court held an evidentiary hearing on October 16, 2008. At the hearing, Mr. Cohen summarized the petitioner's argument as follows: "What we are saying here is the ineffective assistance of counsel was not the failure to convey the plea offer. The ineffective assistance of counsel was the failure to tell the defendant, look, Mr. Dedushaj, you can't win." (Tr. at 94.)

---

[1] The petitioner also argues that his right to due process was violated when Justice Allen denied his § 440.10 motion without holding a hearing. But the decision of a state court not to hold a hearing on a § 440.10 motion, even if it is erroneous, is not a basis for habeas relief. "Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." Manning v. Fischer, 2006 U.S. Dist. LEXIS 85624, at *27 (S.D.N.Y. Nov. 22, 2006) (quoting Diaz v. Greiner, 110 F.Supp.2d 225, 235 (S.D.N.Y. 2000) (internal quotation marks and citation omitted); Jones v. Duncan, 162 F.Supp.2d 204, 217-18 (S.D.N.Y. 2001) (internal quotation marks and citations omitted) (collecting cases). Therefore, "[petitioner's] assertion that the failure to hold a hearing on his CPL §[] 440.10 . . . motion[] violated due process is not cognizable on federal habeas review." Jones, 162 F.Supp.2d at 219. In any event, the due process argument is moot, because this Court has since held an evidentiary hearing on the claims originally raised in the petitioner's § 440.10 motion.

4

II

A

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Walker v. Girdich, 410 F.3d 120, 122 (2d Cir. 2005).

A state court decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves "an unreasonable application of ... clearly established Federal law" when the state court "correctly

identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08.

To meet that standard, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted).

B

Any claims of ineffective assistance of counsel must be evaluated under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on these claims, the petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance was prejudicial to the petitioner's case. See id. at 687-88; Gersken v. Sankowski, 426 F.3d 588, 607 (2d Cir. 2005). Self-serving conclusory allegations to this effect are insufficient to establish ineffective assistance of counsel. United States v. Torres, 129

F.3d 710, 715-17 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1099-1101 (2d Cir. 1992).

The petitioner cannot meet the first prong of the Strickland test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 687); see also Hernandez v. United States, 280 F.Supp.2d 118, 122 (S.D.N.Y. 2003). Indeed, there is a "strong presumption" that the defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (citing Strickland, 466 U.S. at 688-89).

To satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Gersten, 426 F.3d at 607. With respect to a claim by a petitioner that the petitioner

7

would have pleaded guilty if his counsel had urged him to do so, the petitioner must demonstrate that there is a "reasonable probability" that but for his counsel's deficiencies, he would have pleaded guilty. Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000).

III

The petitioner argues that the justification defense was fatally flawed, and therefore Mr. Marley should have urged him as strongly as possible to accept the Government's offer of a plea bargain, pursuant to which he would have faced three years imprisonment, rather than take the case to trial. He argues that Mr. Marley's failure to do so constituted ineffective assistance of counsel.

"[D]efense counsel must give the client the benefit of counsel's professional advice on [the] crucial decision of whether to plead guilty. As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy, 208 F.3d at 44-45 (internal quotation marks and citations omitted). However, "the ultimate decision whether to plead guilty must be made by the defendant. And a lawyer must take care not to

8

coerce a client into either accepting or rejecting a plea offer." Id. at 45 (internal citations omitted). "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . ." Id.

In this case, Justice Allen's rejection of the petitioner's § 440.10 motion was neither contrary to, nor based upon an unreasonable application of, federal law. Mr. Marley plainly met the standard for effective assistance of counsel, especially given the wide range of reasonableness afforded attorneys in advising their clients with respect to plea offers.

It is undisputed between the parties that Mr. Marley informed the petitioner of the District Attorney's plea offer. In addition, the evidence reflects that Mr. Marley discussed the plea offer thoroughly with the petitioner. At the evidentiary hearing, Mr. Marley testified credibly that he discussed the plea offer with the petitioner on more than one occasion. The petitioner "rejected the offer several times, meaning two or three times." (Tr. at 26.) Mr. Marley testified that he went over the pros and cons of accepting or rejecting the offer with the petitioner: "I gave my client the good, the bad, and the ugly outcomes of fighting the case, meaning going to trial, and he made the decision, in consultation with his fiancée and told

9

me explicitly and repeatedly that he wanted to go to trial."
(Tr. at 25.) Mr. Marley also testified that he discussed the immigration consequences of accepting the plea offer with the petitioner. (Tr. at 56.) Moreover, he informed the petitioner of the maximum sentence he would face if convicted at trial. (Tr. at 60.)

Prior to the hearing, and in connection with his § 440.10 motion, the petitioner submitted an Affidavit in which he alleged that Mr. Marley advised him not to take the plea because there was no way he would lose at trial. (Dedushaj Ex. F ¶ 3.) He also alleged in the Affidavit that Mr. Marley never informed him of the maximum possible sentence upon conviction for first-degree assault. (Dedushaj Ex. F ¶ 6.) But the petitioner's statements in his Affidavit are not credible in light of Mr. Marley's credible testimony to the contrary.

The evidence also reflects that Mr. Marley explained the legal concepts involved in the justification defense to the petitioner. Mr. Marley testified that he explained legal concepts such as the use of deadly force, the significance of identifying the initial aggressor, and the duty to retreat to the petitioner. (Tr. at 46, 49.) He testified further that he explained the subjective and objective components of the justification defense to the petitioner. (Tr. at 53.) The petitioner made the decision to reject the plea offer and take

10

the case to trial after these discussions had taken place.  The petitioner stated in his Affidavit that Mr. Marley never instructed him on the legal concepts involved in the justification defense.  (Dedushaj Ex. F ¶ 5.)  But in light of the credible testimony of Mr. Marley in open court, the petitioner's statements in his Affidavit are not credible.

Moreover, despite the petitioner's contentions, Mr. Marley succeeded in persuading Judge Grella to include an instruction on self-defense in the jury charge.  Thus, the issue of self-defense was put before the jury as a question of fact, and the string of cases cited by the petitioner to support the proposition that the justification defense was not viable as a matter of law are beside the point.  As Mr. Marley explained in his testimony, no other defense seemed plausible.  (Tr. at 41.)  It was reasonable for Mr. Marley to adopt a justification strategy at trial after his client had told him in clear terms that he did not wish to accept the plea offer.

This is not a case where trial counsel's advice with respect to a plea offer was so lacking, the petitioner's prospects at trial so bleak, and the consequences of rejecting a plea offer so disproportionate to the realistic risks of trial, that counsel was constitutionally ineffective in not urging the client to accept the plea offer.  The paradigm for such a case in this Circuit is Boria v. Keane, 99 F.3d 492 (2d Cir. 1996).

11

In Boria, the petitioner had been indicted for a Class A-II felony. The District Attorney offered the petitioner a plea bargain, through trial counsel, pursuant to which the petitioner would face one to three years imprisonment in exchange for pleading guilty. At the time the offer was made, the District Attorney advised trial counsel that should the offer be rejected, a superseding indictment for a Class A-1 felony would be filed, which would make that or any similar plea impossible. The offer was rejected and the petitioner was convicted, and sentenced to a prison term of twenty years to life. Id. at 494-95. The petitioner moved to vacate the conviction, alleging ineffective assistance of counsel on the basis that trial counsel did not adequately advise the petitioner with respect to the plea offer. In his testimony at an evidentiary hearing on the motion in that case, trial counsel "made clear that, although he never even suggested such a thought to petitioner, it was his own view that his client's decision to reject the plea bargain was suicidal." Id. at 495. Despite such bleak prospects for the petitioner in the absence of a plea, "time and again, and in many forms, [trial counsel] made clear that he had not in any way or at any time discussed with the petitioner the advisability of accepting or rejecting the offered plea." Id. Rather, "after advising petitioner that a rejection of the plea would be final in the sense that the expected superseding

12

indictment would eliminate all possibility of a minimal sentence, he kept discussing with petitioner strategies he planned to follow in defending against the new indictment." Id.

This case is nothing like Boria. Mr. Marley discussed the plea offer on several occasions with the petitioner in a thorough manner, canvassing the pros and cons of the decision whether to proceed to trial. Moreover, Mr. Marley's testimony did not reflect that he thought the rejection of the plea sealed the petitioner's fate in the case. On the contrary, Mr. Marley believed that justification was an imperfect but viable defense. (Tr. at 46.)

In light of the foregoing, it was reasonable for Mr. Marley to represent the petitioner in the manner that he did. Mr. Marley brought the District Attorney's plea offer to the petitioner's attention and discussed it with him thoroughly and on multiple occasions. When the petitioner declined the plea offer, Mr. Marley respected that decision and put forward the best defense for his client that he could. He succeeded in having an instruction on self-defense included in the jury charge, and thereby placed the issue of self-defense before the jury as a question of fact. He did not provide constitutionally ineffective assistance of counsel.

Moreover, the petitioner has also failed to demonstrate prejudice as required under Strickland. "To succeed on his

claim, petitioner, inter alia, must affirmatively demonstrate prejudice by showing a 'reasonable probability' that, but for his counsel's failure to advise him of the desirability of taking the . . . plea offer, petitioner would have accepted the offer." Smith v. McGinnis, No. 02 Civ. 1185, 2003 WL 21488090, at *4 (S.D.N.Y. June 25, 2003); see also Purdy, 208 F.3d at 409; Gluzman v. United States, 124 F.Supp.2d 171, 177 (S.D.N.Y. 2000); Yeung v. Artuz, No. 97 Civ. 3288, 2000 WL 145103, at *8 (S.D.N.Y. Feb. 3, 2000). The petitioner has not shown a reasonable probability that had Mr. Marley tried harder to persuade him that the plea offer was desirable and that he should accept it, he would have done so.

In his Affidavit, the petitioner only stated that he would have accepted the plea offer if Mr. Marley had informed him of the maximum possible sentence upon conviction, and told him that "[he] could not claim self-defense . . . ." (Dedushaj Ex. F ¶ 6.) These statements did not establish prejudice because the evidence reflects that Mr. Marley did inform the petitioner of the maximum possible sentence upon conviction, and the jury charge given at trial reflects that the petitioner could claim self-defense.[2] Thus, the petitioner has not shown that there was

---

[2] In circumstances where defense counsel fails entirely to convey a plea offer to a defendant who is later convicted at trial, "a significant sentencing disparity [between the plea offer and the sentence upon conviction] in combination with defendant's statement of his intention is sufficient to support a prejudice finding." Pham v. United States, 317 F.3d 178, 182 (2d

14

a reasonable probability that he would have accepted the offer if urged to do so by Mr. Marley, and cannot demonstrate that he was prejudiced by Mr. Marley's representation.

CONCLUSION

For the reasons explained above, the petitioner's motion pursuant to 28 U.S.C. § 2254 is **denied**. The Clerk is directed to enter judgment dismissing the petition and closing this case.

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right.

**SO ORDERED.**

**Dated: New York, New York
November 7, 2008**

John G. Koeltl
United States District Judge

---

Cir. 2003). However, there is no claim in this case that Mr. Marley failed entirely to convey the plea offer to the petitioner. Moreover, the sentencing disparity in this case - the difference between the three years offered in the plea and the five years to which the petitioner was sentenced - was relatively minor, and the petitioner did not state in his Affidavit that if Mr. Marley had urged him that the plea offer was desirable, he would have accepted it.

15